UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

_____

**MARLENE A. JACOBSON,**
an individual,

        Plaintiff,

-*vs*-

**MACOMB COUNTY COMMUNITY COLLEGE A/K/A COMMUNITY COLLEGE DISTRICT OF THE COUNTY OF MACOMB,**
a community college district located within the County of Macomb,

        Defendant.

Case No.: 2016 -            -
Hon:

_____/

BURGESS SHARP & GOLDEN, PLLC
Attorneys for Plaintiffs
BY:   Joseph A. Golden (P14105)
Heidi T. Sharp (P69641)
43260 Garfield Road, Suite 280
Clinton Township, MI 48038
(586) 226-2627
joseph@bsglawfirm.com
heidi@bsglawfirm.com

_____/

## COMPLAINT AND JURY DEMAND

Marlene A. Jacobson ("PLAINTIFF") states the following for her Complaint against Macomb County Community College a/k/a Community College District of the County of Macomb ("MCCC"):

1

1. Plaintiff is a resident of the Township of Clinton, County of Macomb, Michigan.

2. Plaintiff is employed by Defendant at the Macomb County Community College Police Department, located at 44575 Garfield, Clinton Township, Michigan.

3. Defendant is a community college located within the geographical limits of Macomb County, Michigan and is a corporate body by name and style of "Community College District of the County of Macomb".

4. The events complained of occurred in or around Macomb County, Michigan.

5. This court has jurisdiction pursuant to Title VII of the Civil Rights act of 1964 as amended, the Americans with Disabilities Act, 42 USC 12101, et seq. and has pendant jurisdiction over the state law claims pursuant to 28 USC 1367(a).

## GENERAL ALLEGATIONS

6. Plaintiff incorporates the preceding paragraphs by reference as if fully re-incorporated herein.

7. Plaintiff began employment with Defendant on or about January 14, 1990 as a police officer.

8. Plaintiff was elevated to the position of shift commander and received numerous commendations and recognition for performance.

9. In this position, Plaintiff eventually began to receive ridicule and criticism from her fellow officers, because the males in the force did not want to take orders from a woman.

10. Plaintiff received written discipline for occurrences that were common place or males were not disciplined for the same or similar actions.

11. In or about 1999 and to the present, Plaintiff was the only female police officer employed by Defendant in a force of approximately 30 police officers.

12. During the course of her employment, Plaintiff was assaulted, through unwanted touching of a sexual nature by a civilian employee, Dispatcher Geoffrey Wegehaupt, on or about 10-15 occasions on Defendant's premises. The unwanted touching occurred from 2012-2014.

13. On each occasion, Plaintiff made it clear to Wegehaupt that the touching was unwelcome.

14. Fearing reprisal and further criticism from her superiors and subordinates, Plaintiff initially did not report the assaults.

15. Plaintiff knew that her male superiors and subordinates had contempt for her and conspired against her.

16. Further, as the only female officer, Plaintiff had to endure Sgt. Stano repeatedly entering the women's changing (locker) room, unannounced and

at various times to access his 'extra' uniforms which he kept in the women's locker room. During these entries to the locker room Plaintiff was subjected to various injustices including Sgt. Stano observing her and making comments.

17. Even though she had previously complained about this behavior, it was not stopped and Sgt. Stano received no discipline for his actions over a series of years.

18. On or about March 14, 2015, Plaintiff received a written reprimand from Captain Wilk for allegedly failing to file Daily Logs on March 3, 4, and 5, 2015. Plaintiff's actions were similar to males who were not disciplined for those actions.

19. When Captain Wilk and other officers learned that Plaintiff had turned her logs in late, as was custom among other male officers to turn in various logs together and not on the day in which each was created, they remarked 'now we have something on her'.

20. On or about March 31, 2015, Plaintiff **was again sexually assaulted by Dispatcher Geoffrey Wegehaupt when he groped her left breast, unwantedly and without permission, while on duty and during the course of her employment.**

21. Plaintiff no longer was willing to tolerate Wegehaupt's sexual assaults of her and contacted Anita Banach, Defendant's Human Resources personnel, on or about March 23, 2015 by leaving a voicemail. When she didn't receive a response, she also emailed Ms. Banach on or about April 3, 2015 to inquire about filing a complaint against someone within her department. Banach responded to the email by telling Plaintiff she had to complete a written report detailing her complaints before they could meet.

22. Plaintiff, fearful of the ongoing harassment she was already facing worsening, did not want to complete a written report and wanted to meet with Ms. Banach in person to explain what she had endured.

23. Because of her fear of reprisal, the daily tension within her Department, the incessant poor treatment she was receiving by male subordinates and superiors, and her department's lack of response to her ongoing complaints and concerns, Plaintiff reached out to counsel in April 2015.

24. When Plaintiff advised Ms. Banach that she had contacted counsel to assist her in making her complaint, Ms. Banach told Plaintiff that she didn't need an attorney.

25. On or about April 21, 2015, Plaintiff filed a Charge of Sex Discrimination with the Equal Employment Opportunity Commission. Plaintiff detailed for

the EEOC the various ways in which she was harassed or discriminated against because she was a female.

26. On or about June 5, 2015, Plaintiff met with Defendant's General Counsel, accompanied by her Union Representative, and reported the sexual assaults she had endured from Wegehaupt and the various ways in which she had been treated differently from her male superiors and subordinates.

27. Thereafter, Defendant undertook an 'investigation' of Wegehaupt's conduct.

28. Included in that investigation was an admission by Wegehaupt that he had in fact assaulted the Plaintiff while in the course of their employment and he had done so on various occasions over the years prior as described by Plaintiff.

29. Further, one of Plaintiff's co-workers admitted that he was aware of Wegehaupt's assault but had not reported it to his superiors or Defendant's human resources, despite being aware that the touching was unwelcome and Plaintiff feared it.

30. From June 5, 2015 – June 18, 2015, Plaintiff **had to work with Wegehaupt on the same shift**, **seeing him and interacting with him**, **even though she had reported to the Defendant's General Legal Counsel that he had sexually assaulted her on a multitude of occasions, she was fearful of**

**him and did not want to be around him and he had admitted the same to Defendant as early as a week prior.**

31. Wegehaupt's actions were eventually reported to the Macomb County Sheriff's Department and he was arraigned on two counts of Criminal Sexual Conduct, Fourth Degree.

32. On or about June 25, 2015, Plaintiff was told by a Superior that her vacation requests were being challenged by other superiors. It was common practice within the Department for officers to use unscheduled vacation time if they were tardy reporting for a shift to avoid being docked paid time. Although no other officers' requests were being challenged, Plaintiff was challenged when she attempted to do the same, as she had been able to do previously.

33. On or about July 4, 2015, Plaintiff, under great stress from the actions she was enduring at work, overslept for her scheduled shift with Defendant.

34. It was custom within Plaintiff's department that if an officer overslept, they would be contacted at home shortly after the start of their shift for a 'welfare check' and allowed to report when they arrived, even if it was several hours after the start of their scheduled shift. They were allowed to use vacation or other compensated time to make up the time in which they were tardy.

35. However, on July 4, 2015, Plaintiff's colleagues refused to contact her when she overslept, treating her differently from other male officers, and instead

reported her "AWOL" for her scheduled shift, incurring discipline against her. When she contacted Defendant and attempted to report for her shift, she was told not to bother and docked the time she missed.

36. Plaintiff learned that Defendant had 'ongoing concerns' with her behavior because she had overslept and had not reported for work, despite requesting to report for the remainder of her shift shortly after it began. Defendant alleged she had a 'pattern' of behavior because she had also overslept and reported late to a shift in or about September 2014, <u>ten months prior.</u>

37. On or about July 13, 2015, Plaintiff learned that she was reported as a 'no show, no call' for her shift on July 4, 2015, even though she had called and informed Defendant that she was able to report for her shift. Further, Plaintiff learned that when she did not arrive timely for her shift, her male superiors stated, 'now we have something on her' and intentionally told her not to report for the remainder of her shift to ensure that she would incur written discipline.

38. On or about July 17, 2015, Plaintiff learned that she did not receive pay for July 4, 2015. Although she did not work the shift, per her union contract everyone was to be paid for the date because it was a national holiday. Further, per the contract, Plaintiff's pay was not to be docked unless she

received a written reprimand. Upon information and belief, no males' pay was docked for the same date.

39. On or about July 22, 2015, Plaintiff learned that Wegehaupt had pled 'no contest' to the Criminal Sexual Conduct charges against him for the sexual assaults committed against Plaintiff and that he was to have no contact with Plaintiff.

40. After it was known within her department that Plaintiff had reported Wegehaupt for the sexual assault, various other superiors and subordinates were heard saying that Plaintiff had 'ruined (Geoffrey's) life' in reference to Wegehaupt and that they had no respect for the Plaintiff causing her an ongoing hostile working environment.

41. On or about August 6, 2015, Plaintiff met with Hunter Wendt, Defendant's General Legal Counsel, her Union President, Michael Dekun, Director of Defendant's Police Department, and Denise Williams, Defendant's Human Resources Representative.

42. During this meeting Defendant addressed Plaintiff's ongoing complaints of sexual harassment and told the Plaintiff she had two options: (1) agree to a 'fitness for duty' exam and go on paid leave, or (2) go on unpaid leave.

43. Under duress in the situation, Plaintiff agreed to take the psychological exam because she felt she had no other choice or would lose her pay and most likely her job.

44. From that day, Plaintiff was placed on a paid leave to undergo the psychological exam.

45. On or about August 20, 2015, Plaintiff was scheduled by Defendant for a psychological exam to take place at Henry Ford Behavioral Health on or about August 27, 2015.

46. On or about August 24, 2015 Plaintiff filed another charge with the EEOC alleging retaliation and disability under the Americans with Disabilities Act.

47. On or about August 27, 2015, Plaintiff underwent a Forensic Neuropsychological Evaluation by Jasdeep S. Hundal. Upon information and belief Dr. Hundal reported to Defendant regarding the Plaintiff "notable work-related stress and feelings of anxiety and depression as they relate to her predicament" and opined that Plaintiff could return to work with the 'accommodation' of her not to come in contact with Sgt. James Stano and to seek therapy.

48. **Dr. Hundal called Plaintiff's sexual assault and ongoing harassment she was facing in the workplace, including Sgt. Stano's continued entry into her locker room a 'predicament' and recommended she seek therapy**

rather than addressing her well documented medical conditions and concerns.

49. On or about October 2, 2015, Plaintiff was informed by Defendant that she was to return to work per Dr. Hundal's recommendation. As part of her return to work, Plaintiff needed to receive clearance from her doctor to do so.

50. During this time period and prior, Plaintiff had been receiving therapy and counseling for her ongoing emotional distress and various stress, anxiety and depression she was experiencing from the exacerbation caused by Defendant.

51. Plaintiff informed her doctor that Defendant intended for her to return to work, and was informed by her doctor that, "given her work environment and the impact of her psychological well-being, I strongly recommend she does not return to work."

52. Plaintiff informed Defendant that per her doctor's instructions she could not return to work and requested the appropriate forms to complete for disability and worker's compensation benefits.

53. Upon information and belief, when the Plaintiff was no longer able to work, various superiors and subordinates expressed joy that she was on disability and would no longer be at work.

54. Plaintiff was denied worker's compensation and disability benefits.

55. On or about January 4, 2016 the Defendant acknowledged that it would pay Plaintiff's accrued PTO benefits and placed Plaintiff on FMLA leave.

56. Plaintiff has since been diagnosed with PTSD and is unable to work per her doctor's instructions. She has received no disability or worker's compensation benefits and continues on leave status with Defendant.

57. The EEOC issued two Right to Sue notices to Plaintiff on or about April 22, 2016, which were received by Plaintiff on or about April 28, 2016.

### COUNT I – HOSTILE WORK ENVIRONMENT DUE TO SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

58. Plaintiff incorporates the preceding paragraphs by reference as if they were fully restated herein.

59. Plaintiff was sexually assaulted by Geoffrey Wegehaupt, an employee of Defendant, while on duty on multiple occasions.

60. The conduct exhibited by Wegehaupt was unwelcome to Plaintiff.

61. The sexual assault on Plaintiff by Wegehaupt was sufficiently severe or pervasive, such that it altered the condition of her employment to create an abusive working environment.

62. Sgt. Stano, a male, continuously and unannounced entered the women's locker room when the Plaintiff was changing before or after her shift.

Plaintiff repeatedly complained about this behavior but nothing was done to rectify it.

63. Plaintiff's sex and report of the sexual assault was a factor in Defendant's decision to adversely act against her interests as an employee by scheduling her to work on the same shift as Wegehaupt even after she reported the sexual assault against her.

64. Plaintiff's sex and report of Sgt. Stano's harassing behavior were factors in Defendant's decision to ignore the Plaintiff's complaints and allow Sgt. Stano to continue to enter the women's locker room when Plaintiff was using it to change her clothes.

65. If Plaintiff was a male, she would not have been treated in the manner described.

66. Defendant's actions were intentional and done with reckless indifference to Plaintiff's rights and sensibilities.

## COUNT II – HOSTILE WORK ENVIRONMENT BASED ON SEX IN VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT ("ELCRA")

67. Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

68. Macomb County Community College is an employer as defined in Michigan's Elliott-Larsen Civil Rights Act (the Act), MCLA 37.2301, 37.2401, MSA 3.5487(301), (401).

69. At all relevant times, Plaintiff was employed by Defendant.

70. Plaintiff is a female who Defendant subjected to a hostile work environment due to her sex.

71. Defendant allowed fellow officers and supervisors to maintain a hostile work environment intentionally created by her fellow officers and superiors.

72. Plaintiff's sex was a factor in Defendant's decision to adversely act against her interests as an employee by not addressing the hostile environment created by Plaintiff's fellow officers and supervisors.

73. If Plaintiff was a male, she would not have been treated in the manner described.

74. Defendant's actions were intentional and done with reckless indifference to Plaintiff's rights and sensibilities.

### COUNT III– RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

75. Plaintiff incorporates the preceding paragraphs by reference.

76. Following Plaintiff's reports of the assaults she was subjected to by Wegehaupt, Sgt. Stano's continued use of the women's locker room and the treatment she received from other male officers, she was retaliated against by fellow officers and supervisors.

77. Defendant subjected Plaintiff to stricter standards and opportunities for disciplines.

78. Defendant took adverse employment actions against Plaintiff by failing to allow her to work on July 4, 2015, subjecting her to a fitness for duty exam, placing her on leave from her duties, allowing colleagues and superiors to state in her presence and in front of others that she had ruined Geoffrey's life, trying to find something to 'get her on' and so forth.

79. Plaintiff would not have been placed on leave by Defendant, forced to undergo a fitness for duty exam, or received written discipline if she had not complained about the hostile work environment that existed.

## COUNT VI – RETALIATION IN VIOLATION OF ELCRA

80. Macomb County Community College is an employer as defined in Michigan's Elliott-Larsen Civil Rights Act (the Act), MCLA 37.2301, 37.2401, MSA 3.5487(301), (401).

81. Following Plaintiff's reporting of the assaults she was subjected to by Wegehaupt, she was retaliated against by fellow officers and supervisors.

82. Defendant subjected Plaintiff to stricter standards and opportunities for disciplines.

83. Defendant took adverse employment actions against Plaintiff by failing to allow her to work on July 4, 2015, subjecting her to a fitness for duty exam, placing her on leave from her duties, allowing colleagues and superiors to

state in her presence and in front of others that she had ruined Geoffrey's life, trying to find something to 'get her on' and so forth.

84. Plaintiff would not have been placed on leave by Defendant, subjected to a fitness for duty exam, or received written discipline if she had not complained about the hostile work environment that existed.

As a direct and proximate result of Defendant's unlawful actions against Plaintiff as described in the previous counts, Plaintiff has sustained injuries and damages, including but not limited to, loss of earnings, loss of career opportunities, mental and emotional distress, loss of reputation and esteem in the community, and loss of the ordinary pleasures of everyday life, including the opportunity to pursue gainful occupation of choice. Plaintiff requests that this court enter judgment against Defendant as follows:

Relief Requested:

   a. Compensatory damages in whatever amount she is found to be entitled;

   b. Exemplary damages in whatever amount she is found to be entitled;

   c. Judgment for lost wages, past and future, in whatever amount she is found to be entitled;

   d. An award for the value of lost fringe benefits, past and future;

   e. An award of interest, costs, and reasonable attorney's fees.

f. Whatever other legal or equitable relief appears to be appropriate at the time of final judgment.

## COUNT VII
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

85. Plaintiff incorporates by reference the preceding paragraphs as if fully reincorporated herein.

86. Plaintiff is a person within the meaning of Section 101(7) of the Americans with Disabilities Act as Amended (ADAAA), 42 USC 12111(7).

87. Defendant meets all of the requirements for employer status under the ADAAA. 42 USC 12111(5)(a).

88. At all relevant times, Plaintiff was an individual who was perceived as having a disability within the meaning of section 3(2) of the ADAAA. 42 USC 12102(2).

89. Plaintiff is a qualified individual with a perceived disability as that term is defined in ADAAA, 42 USC 12111(8).

90. Plaintiff was treated differently than others because of her perceived disability, by being forced to undergo a fitness for duty exam and other adverse actions.

91. Defendant's forcing the Plaintiff to undergo a fitness for duty exam constitutes discrimination against Plaintiff with respect to terms and conditions or privileges of employment.

92. Defendant's conduct constitutes a violation of the ADAAA.

93. Defendant conducted itself with malice or with reckless indifference to Plaintiff's federally protected rights.

94. As a direct and proximate result of Defendant's discrimination on the basis of her perceived disability, Plaintiff has suffered lost wages, benefits, and loss of employment advancement opportunities.

95. In addition, Defendant's violation of the ADAAA has exacerbated her already existing medical conditions.

96. Further, Defendant's forcing Plaintiff to undergo a fitness for duty exam caused her to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

Plaintiff requests that this Honorable court award her:

a) A judgment of damages, past and future, in whatever amount she is found to be entitled;

b) Compensatory damages in whatever amount she is found to be entitled;

c) Emotional distress damages in whatever amount she is found to be entitled;

d) Punitive and exemplary damages commensurate with the wrong and Defendant's ability to pay; and

e) An award of interest, costs, and reasonable attorney fees.

Dated: July 26, 2016            Respectfully Submitted,

Burgess Sharp & Golden, PLLC

<u>By: /s/ Heidi T. Sharp</u>
Joseph A. Golden (P14105)
Heidi T. Sharp (P78327)
Attorneys for Plaintiff
43260 Garfield Road, Suite 280
Clinton Township, MI 48038
586-226-2627
joseph@bsglawfirm.com
heidi@bsglawfirm.com

# DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a jury trial in the above-captioned matter.

Dated: July 26, 2016            Respectfully Submitted,

Burgess Sharp & Golden, PLLC

<u>By: /s/ Heidi T. Sharp</u>
Joseph A. Golden (P14105)
Heidi T. Sharp (P78327)
Attorneys for Plaintiff
43260 Garfield Road, Suite 280
Clinton Township, MI 48038
586-226-2627
joseph@bsglawfirm.com
heidi@burgess-sharp.com